UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELECT SPECIALTY HOSPITAL-DENVER, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX M. AZAR II, *Secretary*, *U.S. Department of Health and Human Services*, <br><br> Defendant. | Civil Action No. 10-1356 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiffs, seventy-five long-term care hospitals ("LTCHs") located in twenty-six states, sought reimbursement from the Department of Health and Human Services ("HHS") for unpaid co-insurance and deductible obligations ("bad debts") of patients eligible for both Medicare and Medicaid ("dual-eligible patients"). The plaintiffs' Motion for Summary Judgment, ECF No. 66, was granted and HHS's Cross-Motion for Summary Judgment, ECF No. 67, was denied. *See Select Specialty Hosp.-Denver, Inc. v. Azar*, 391 F. Supp. 3d 53, 70 (D.D.C. 2019). Now, HHS seeks reconsideration of that decision under Federal Rules of Civil Procedure 59(e) and 60(b). *See* Def.'s Mot. for Reconsid. of the Court's Aug. 22, 2019 Mem. Op. ("Def.'s Mot."), ECF No. 78. Plaintiffs ask for an order amending the judgment to include an award of prejudgment interest under 42 U.S.C. § 1395oo(f)(2). *See* Pls.' Mot. for Prej. Interest ("Pls.' Mot."), ECF No. 77. For the reasons set forth below, the defendant's motion is denied and the plaintiffs' motion is granted.

1

## I. BACKGROUND

The statutory, regulatory, procedural, and factual background for this case were provided in the earlier opinion. *See Select Specialty*, 391 F. Supp. 3d at 56–66. Still, some background bears repeating here.

### A. Statutory and Regulatory Background

"Bad debts" are defined in the Medicare context as "amounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services." 42 C.F.R. § 413.89(b)(1). Medicare providers may be reimbursed by the Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare program, for "allowable" bad debts. *Id.* § 413.89(d). A bad debt cannot be "allowable" unless "[t]he provider [is]. . . able to establish that reasonable collection efforts were made." *Id.* § 413.89(e) (outlining four criteria that determine whether a debt is allowable). For dual-eligible patients' bad debts, providers can satisfy this reasonable collection requirement by showing (1) that the patient has "been determined eligible for Medicaid" and (2) that "no source other than the patient," including Medicaid, "would be legally responsible for the patient's medical bill." Provider Reimbursement Manual, Part I ("PRM-I") § 312. The second obligation is at issue here.

To fulfill this obligation, CMS currently requires that all providers "bill the patient or entity legally responsible for the patient's bill." H-AR at 584 (Joint Signature Memorandum 370 ("JSM 370") (Aug. 10, 2004)).[1] "[W]ith respect to 'dual-eligibles,'" current CMS guidance

---

[1] Four Administrative Records have been filed in this consolidated case. The AR from the first-filed case, *Select Specialty Hosp.- Denver, Inc. v. Azar* ("*Select I*"), Civ. No. 10-1356, is referred to as the *Select I* Administrative Record ("S1-AR"). *See* Joint Appendix ("JA"), Appendix from *Select I* AR (1 of 2), ECF No. 73-1; JA, Appendix from *Select I* AR (2 of 2), ECF No. 73-2. The first-filed case also includes a Supplemental AR ("S1S-AR") with documents from after the case was remanded to CMS. *See* JA, Appendix from *Select I* AR Supplement, ECF No. 73-3. The AR from the second-filed case, *Select Specialty Hosp.-Birmingham v. Azar* ("*Select II*"), Civ. No. 17-235, is referred to as the *Select II* Administrative Record ("S2-AR"). *See* JA, Appendix from *Select II* AR (1 of 3), ECF No. 73-4; JA, Appendix from *Select II* AR (2 of 3), ECF No. 73-5; JA from *Select II* AR (3 of 3), ECF No. 73-6. Finally, the AR from the third-filed case, *Select Specialty Hosp.-Tulsa/Midtown, LLC v. Azar*

further states that "in those instances where the state owes none or only a portion of the dual-eligible patient's deductible or co-pay, the unpaid liability for the bad debt is not reimbursable to the provider by Medicare until the provider bills the State, and the State refuses payment (with a State Remittance advice)." *Id.*

Defendant insists that the must-bill policy and the more specific remittance advice ("RA") requirement are both longstanding. *See* Def.'s Mot. at 2. Prior to 2007, however, the LTCH plaintiffs had been reimbursed for their dual-eligible patients' bad debts without first billing state Medicaid programs and obtaining an RA. *See Select Specialty*, 391 F. Supp. 3d at 55, 60–62. These steps were viewed as unnecessary because states were not liable for inpatient care of dual-eligible patients by LTCHs. *Id.* at 55. Indeed, none of the plaintiffs were enrolled in their state Medicaid programs as providers prior to 2007, *id.* at 60, and some states would not allow these LTCHs to enroll, *id.* at 61.

In 2007, Medicare administrative contractors suddenly began denying plaintiffs' requests for reimbursement for dual-eligible bad debts, citing plaintiffs' failure to present RAs.[2] In July and August 2007, one set of plaintiffs, the *Select I* plaintiffs, had their reimbursement requests for dual-eligible patients' bad debts in fiscal year 2005, totaling $438,693, denied by their contractor, Wisconsin Physicians Service Corporation ("WPS") (formerly known as "Mutual of Omaha"). *See Select Specialty*, 391 F. Supp. 3d at 61 (citing S1-AR at 674). A second set of plaintiffs, the *Select II* plaintiffs, had various such requests for fiscal years 2006–2010, totaling $19,317,678, denied by contractors WPS and Novitas Solutions, Inc. ("Novitas"), beginning in

---

("*Hillcrest*"), Civ. No. 18-584, is referred to as the *Hillcrest* Administrative Record ("H-AR"). *See* JA, Appendix from *Hillcrest* AR, ECF No. 73-7.

[2] The Secretary of HHS is required by statute to delegate most of "[t]he administration of [Medicare Part A] . . . through contracts with [M]edicare administrative contractors." 42 U.S.C. § 1395h(a). These contractors are responsible for "[d]etermining . . . the amount of the payments required . . . to be made to providers of services, suppliers and individuals" and for making those payments. *Id.* § 1395kk-1(a)(4).

June 2007. *Id.* (citing S2-AR at 457 (Stipulations ¶ 9)). The third plaintiff, the *Hillcrest* plaintiff, had dual-eligible bad debts reimbursement requests denied for the first time by WPS in December 2008; this plaintiff was ultimately denied $568,803 in reimbursements for dual-eligible bad debts for fiscal years 2007 and 2008. *Id.* (citing H-AR at 555–57, 565–67; H-Answer ¶¶ 6).

The three sets of plaintiffs appealed the contractors' denials to the Provider Reimbursement Review Board ("PRRB"), which reversed those denials in part. *See id.* at 64–65 (citing *Select Specialty '05 Medicare Dual Eligible Bad Debts Grp.* v. *Wisc. Physicians Serv.*, PRRB 2010-D25 (Apr. 13, 2010); *Select Specialty Medicare Dual Eligible Bad Debts CIRP Grps. v. Novitas Solutions, Inc.*, PRRB 2016-D22 (Sept. 27, 2016); *Hillcrest Specialty Hosp. v. Novitas Solutions, Inc.*, PRRB 2018-D3 (Nov. 6, 2017)). The CMS Administrator, whom the Secretary has given authority to hear appeals from the PRRB, reinstated the contractors' decisions to deny the plaintiffs' dual-eligible bad debt reimbursements for failure to submit RAs. *Id.* at 65 (citing S1-AR at 2–19; S2-AR at 1–22; H-AR at 2–29).

### B. The Instant Litigation

The first set of plaintiffs, the *Select I* plaintiffs, appealed the Administrator's decision about their reimbursements to this Court, *see* Complaint, *Select I*, Civ. No. 10-1356 ("S1-Compl."), ECF No. 1, which granted partial summary judgment to the plaintiffs and remanded the case to the Administrator "for reconsideration of the limited issue of whether Plaintiffs were justified in relying on CMS' prior failure to enforce the must-bill policy with respect to dual-eligible reimbursement claims from non-participating Medicaid providers," *Cove Assocs. Joint Venture v. Sebelius*, 848 F. Supp. 2d 13, 30 (D.D.C. 2012). The Administrator affirmed the previous denial of reimbursements to the *Select I* plaintiffs, *see Select Specialty*, 391 F. Supp. 3d at 65–66 (citing S1S-AR at 3–9), and the *Select I* plaintiffs' case in this Court was then reopened

4

and eventually consolidated with the *Select II* and *Hillcrest* plaintiffs' cases, *see* Minute Order (Jan. 10, 2019).

In granting the plaintiffs' motion for summary judgment and denying the defendant's cross-motion, *see Select Specialty*, 391 F. Supp. 3d at 56, the Court held that CMS was required by the Medicare Act, 42 U.S.C. § 1395hh(a)(2), to conduct notice and comment rulemaking before subjecting the non-Medicaid participating plaintiffs to the must-bill and RA requirements, *Select Specialty*, 391 F. Supp. 3d at 67. Section 1395hh(a)(2) requires CMS to give notice and an opportunity to comment when "establish[ing] or chang[ing] a substantive legal standard governing the scope of benefits." 42 U.S.C. § 1395hh(a)(2). A "substantive legal standard," as defined by the D.C. Circuit, "at a minimum includes a standard that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017) (quoting *Black's Law Dictionary* (10th ed. 2014)). On this definition, the provision "distinguish[es] a substantive from a *procedural* legal standard," and requires that CMS conduct notice and comment rulemaking for changes to the former but not to the latter type of standard. *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019).[3]

The record evidence in this case demonstrated that "CMS's application of the must-bill and RA requirements to the plaintiffs beginning in 2007 was a change in policy." *Select Specialty*, 391 F. Supp. 3d at 62. That change was substantive rather than procedural because "CMS changed not just the steps that existing LTCHs must take, vis-à-vis CMS, to be reimbursed, but also changed whether such entities must form contracts with third parties, the state Medicaid programs." *Id.* at 69. Given that the change was substantive, "without satisfying

---

[3] In *Allina*, the Supreme Court affirmed the D.C. Circuit's judgment in *Allina Health Services v. Price*, without endorsing "in every particular," the D.C. Circuit's definition of "substantive," preferring to leave "questions about the statute's meaning" not essential to resolving that case for "other cases." *Allina Health Servs.*, 139 S. Ct. at 1814. This Court is bound by the law of the D.C. Circuit.

5

the notice-and-comment obligation of § 1395hh(a)(2), CMS could not, and indeed cannot, impose the must-bill policy and RA requirement on the plaintiffs for the period when they were non-Medicaid-participating providers." *Id.* Thus, summary judgment was granted to the plaintiffs, the Administrator's decisions were set aside, and the case was remanded to HHS for proceedings consistent with the Court's ruling. *See* Order (Aug. 22, 2019), ECF No. 74.

HHS now seeks reconsideration of that judgment under Rules 59(e) and 60(b). *See* Def.'s Mot. at 1–2. Plaintiffs, meanwhile, ask for an order amending the earlier judgment to include an award of prejudgment interest. *See* Pls.' Mot. at 1.

## II.     LEGAL STANDARD

Altering or amending a judgment under Federal Rule of Civil Procedure 59(e) "is an extraordinary remedy which should be used sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)), as a "limited exception to the rule that judgments are to remain final," *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). A Court "may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Further, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (internal quotation marks and citation omitted)). Whether to grant a Rule 59(e) motion is within the district court's discretion. *Mohammadi*, 782 F.3d at 17.

6

Rule 60(b) allows a district court to "relieve a party . . . from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect," FED. R. CIV. P. 60(b)(1), or for "any other reason that justifies relief," *id.* 60(b)(6). Relief for "any other reason," *id.*, may be granted only in "extraordinary circumstances," *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

### III. DISCUSSION

The defendant's arguments for reconsideration are addressed first, followed by the plaintiffs' request.

#### A. Defendant's Motion

HHS contends that the judgment "rests on [the] incorrect legal premise" that the contractors' sudden application of the must-bill and RA requirements to the plaintiffs amounted to a change in policy. Def.'s Mot. at 6; *see also* Def.'s Reply Supp. Mot. for Reconsid. of the Court's Aug. 22, 2019 Mem. Op. at 2 ("Def.'s Reply"), ECF No. 82 (arguing that this conclusion was "a clear error or mistake"). In support of this point, HHS makes three arguments, all of which were already raised or "could have been raised prior to the entry of judgment." *Exxon Shipping*, 554 U.S. at 485 n.5. That alone justifies denying the motion under Rule 59. *See Messina v. Krakower*, 439 F.3d 755, 759 (D.C. Cir. 2006) (finding no error in denying Rule 59(e) motion where "motion did nothing more than rely on the same arguments that [the movant] originally made" (internal quotation marks and citation omitted)). HHS's arguments, in addition to being recycled or previously available, lack merit and certainly do not show any "mistake," FED. R. CIV. P. 60(b)(1), or "clear error" or "manifest injustice" in the challenged ruling, *Leidos*, 881 F.3d at 217.

First, HHS challenges the conclusion that the requirements were "not applied to any of the plaintiffs" until 2007, *see Select Specialty*, 391 F. Supp. 3d at 59, as "contradict[ing]" the Court's "prior decision in this case," *Cove Associates*, Def.'s Mot. at 7. Second, HHS insists that

7

the same conclusion contradicts out-of-circuit precedent, *Community Hospital of the Monterey Peninsula v. Thompson (CHMP)*, 323 F.3d 782 (9th Cir. 2003), recognizing application of the must-bill and RA requirements to certain hospitals before 2007, *see* Def.'s Mot. at 8.[4] Third, HHS argues that, even if the requirements were never applied to the LTCH plaintiffs before 2007, that "fail[ure] to apply the must-bill policy (or the remittance advice requirement)" is attributable to the contractors, not to HHS, *id.* at 7, because "errors in Contractor determinations do not constitute agency policy," *id.* at 10.[5] These arguments are rejected in turn.

*Cove Associates* does not contradict *Select Specialty*. *Cove Associates* found that "the Secretary's application of the must-bill policy to [the *Select I*] Plaintiffs is inconsistent with the Secretary's prior treatment of Plaintiff's reimbursement requests," *Cove Assocs.*, 848 F. Supp. 2d at 29, identifying the same change recognized in *Select Specialty*, *see Select Specialty*, 391 F. Supp. 3d at 59.[6] Evaluating whether that change was "arbitrary, capricious, [or] an abuse of discretion" 5 U.S.C. § 706(2)(A), *Cove Associates* remarked that "the Secretary did not change [the] policy—the must-bill requirement is longstanding—but CMS did change how it enforces the policy," remanding to the agency for reconsideration, as just explained. *Cove Assocs.*, 848 F. Supp. 2d at 29. *Cove Associates*' conclusion that CMS "change[d] how it enforces the policy," *id.*, is fully consistent with *Select Specialty*'s conclusion that the change altered a "substantive legal standard," triggering the requirement that CMS conduct notice and comment rulemaking, *see Select Specialty*, 391 F. Supp. 3d at 69. Even if the Secretary did not "change [the] policy"

---

[4] At the summary judgment stage, defendant cited both *Cove Associates* and *CHMP* in support of the argument that "[t]he must-bill policy is longstanding." Def.'s Mem. Supp. Cross-Mot. Summ. J. & Opp'n Pls.' Mot. Summ. J. ("Def.'s Mem.") at 28–31, ECF No. 67-1.

[5] Defendant also made a version of this argument before, asserting that HHS "cannot be bound by the misrepresentations of [its] contractors." Def's Mem. at 32 n.15.

[6] More specifically, *Cove Associates* explained that the *Select I* plaintiffs had been reimbursed "prior to fiscal year 2004–2005 . . . without Medicaid RAs," *Cove Assocs.*, 848 F. Supp. 2d at 29, because those plaintiffs were "non-Medicaid certified providers" to whom "the state does not have any liability," *id.* (quoting S-AR 549).

8

for purposes of arbitrary and capricious review, HHS's change in "how it enforces the policy" can amount to "establish[ing] or chang[ing] a substantive legal standard governing the scope of benefits" for purposes of 42 U.S.C. § 1395hh(a)(2). *Cove Associates* did not consider § 1395hh(a)(2) and, in fact, the D.C. Circuit and Supreme Court cases defining the reach of that rulemaking requirement post-date *Cove Associates.*

Nor does *CHMP* contradict *Select Specialty*. For one, *CHMP* involved providers who were enrolled in their state's Medicaid program, Medi-Cal, but who "found th[e] 'must bill' policy onerous . . . and undertook to develop a computer-based system intended to establish whether, and to what extent, Medi-Cal was liable for particular" bad debts. *CHMP*, 323 F.3d at 785. After the Secretary "declined to accept" the providers' self-made system, the providers challenged the legality of the must-bill policy. *Id.* *CHMP*'s determination that a must-bill policy existed as early as 1989 for those providers, *see id.*, does not undercut the determination, based on the administrative record in this case, that the must-bill and RA requirements were not applied to the non-Medicaid participating plaintiffs in this case until 2007.[7] In addition, as with *Cove Associates*, *CHMP*'s conclusion, on review under the Administrative Procedure Act, that a must-bill policy is "a reasonable implementation of the reimbursement system and not inconsistent with the statute and regulations governing fiscal years 1989 through 1995," *id.*, does not preclude *Select Specialty*'s conclusion that the sudden denials of plaintiffs reimbursements amounted to a substantive change under 42 U.S.C. § 1395hh(a)(2).[8]

---

[7] Further, *CHMP*'s conclusion that the must-bill and RA requirements applied to Medicaid participating providers in the 1980s is not universally accepted, especially as to the RA requirement. *Mercy General Hospital v. Azar*, 344 F. Supp. 3d 321 (D.D.C. 2018), *on reconsideration*, No. CV 16-99 (RBW), 2019 WL 5269022 (D.D.C. Oct. 17, 2019), held that "the Administrator's finding that a remittance advice requirement existed prior to [1987] is not supported by substantial evidence." 344 F. Supp. 3d at 351.

[8] Defendant also invokes a footnote in *CHMP* stating that a 1995 PRM provision laying out circumstances in which providers need not bill Medicaid violated a "moratorium on changes in bad-debt-reimbursement policies" imposed by Congress in 1987. 323 F.3d at 798 n.9; *see also* Def.'s Mot. at 8. Defendant argues that "[t]his Court's holding that the Secretary established or changed the must-bill policy . . . contradicts" this aspect of *CHMP* because

HHS's argument that CMS cannot be held responsible because the sudden denials were attributable to contractors misunderstands the record evidence and misconstrues the Court's decision. HHS reads that decision to "conclude[] that the agency had changed its must-bill requirement . . . by pointing to actions of . . . Contractors, not the agency itself." Def.'s Reply at 2; *see id.* at 4 (mischaracterizing the decision as "mistaking erroneous Contractor application of agency policy with the agency's policy itself"). The Court's conclusion that the agency changed its policy for purposes of 42 U.S.C. § 1395hh(a)(2) was based on communications by contractors as well as on agency pronouncements, including JSM-370, issued by the Secretary in 2004, and CMS's instructions for completing the Provider Cost Report Reimbursement Questionnaire ("HCFA-339"). "CMS's instructions for completing the [HCFA-339] . . . explicitly stated that billing state Medicaid programs 'may not be necessary . . . where the provider can establish that Medicaid is not responsible for payment,' lending further support to the proposition that CMS previously did not apply the must-bill policy to all providers." *Select Specialty*, 391 F. Supp. 3d at 62 (citation omitted) (quoting S1-AR at 512 (HCFA-339 at 2)); S2-AR at 1285 (same); H-AR at 552 (same)). JSM-370 marked the change in standard: "The Secretary cites nothing in the record articulating an absolute RA requirement before the issuance of JSM-370, and none of the cited provisions in reimbursement instruction manuals, or PRMs, for providers make any mention of 'remittance advices.'" *Id.* at 59–60 (citing PRM-I §§ 310, 312, 322).

Further, the contractor statements dismissed by HHS show that CMS directed the contractors to begin denying plaintiffs' requests for reimbursements not, as HHS alleges, that the

---

"[i]t cannot be the case that both relieving providers from the Secretary's policy and enforcing the Secretary's policy are unlawful." Def.'s Mot. at 8–9. This argument only helps the defendant if one adopts *CHMP*'s view that a must-bill policy and RA requirement existed before 1987, but, as just explained, the record in this case and in *Mercy General Hospital* supported a different conclusion on that score. More generally, invocation of the bad-debt moratorium does not help the defendant. Plaintiffs contended that they were entitled to summary judgment because the sudden denials of reimbursements amounted to a change in policy that violated the bad debt moratorium. Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mem.") at 34, ECF No. 66.

10

contractors, acting alone, were correcting course after years of misapplying clear CMS policy. *See* Def.'s Mot. at 9; Def.'s Reply at 3. *Select Specialty* relied on a contractor's statement that "[f]rom this point forward, all providers, Medicaid certified or not, MUST bill the State and obtain a valid RA showing denied or partial payment before we allow the bad debt on the cost report." *Id.* at 62 (quoting S1-AR at 549 (Email from Kristi Rohrich, Audit Supervisor, Mutual of Omaha, to Wade Snyder, Director, Reimbursement, Select Medical Corporation (Apr. 5, 2007))). In that same email, the contractor explains that the change is "based on email clarification from CMS" and a "statement" from "CMS Central Office." S1-AR at 549; *see also* S2-AR at 1297 (same). A second contractor email corroborates CMS's involvement — "CMS had clarified their position with respect to Medicaid (dual eligible patients) in March of 2007." H-AR at 542 (Email from Don O'Neal, Audit Supervisor, WPS, to Kevin Vaughn, Vice President of Reimbursement, Ardent Health Services (Nov. 14, 2008)).

Finally, the supplemental authorities highlighted by HHS support rather than undercut the judgment. *See* Def.'s Notice of Supplemental Authorities, ECF No. 84. In *New Lifecare Hospitals of North Carolina v. Azar*, No. 17-cv-0237 (TNM), 2019 WL 4737187 (D.D.C. Sept. 27, 2019), the Court found insufficient evidence in the record that CMS had changed how it applied its must-bill policy to the providers in that suit, distinguishing *Select Specialty* because, here, "the plaintiffs established that CMS had changed how it applied its must-bill policy," *id.* at *7. *Mercy General Hospital*, which involved Medicaid participating providers, held that "the Administrator's finding that a remittance advice requirement existed prior to [1987] is not supported by substantial evidence," 344 F. Supp. 3d at 351, and did not revise that conclusion on reconsideration, *see* 2019 WL 5269022, at *6–8 (reaffirming this conclusion as to the remittance advice requirement).

11

In sum, defendant's arguments are recycled and unpersuasive, and the request for reconsideration is denied.

### B. Plaintiffs' Motion

The complaints in this consolidated case, as well as the plaintiffs' summary judgment papers, included requests for prejudgment interest under 42 U.S.C. § 1395oo(f)(2). *See* S1-Compl. ¶ 128; Complaint, *Select II*, Civ. No. 17-235 ("S2-Compl."), Dkt. No. 1, ¶ 150; *Hillcrest*, Civ. No. 18-584 ("H-Compl."), Dkt. No. 1, ¶ 69; Pls.' Mem. at 70; Pls.' Reply Supp. Mot. Summ. J. & Opp'n Def. Cross-Mot. Summ. J. at 35, ECF No. 70. Section 1395oo(f)(2) states that "[w]here a provider seeks judicial review pursuant to [§ 1395oo(f)(1)]," then "the amount in controversy shall be subject to annual interest . . . to be awarded by the reviewing court in favor of the prevailing party."[9] Plaintiffs' pending motion asks the Court to amend the judgment under Rule 59(e) to include prejudgment interest under this provision. *See* Pls.' Mot. at 1.[10]

Here, plaintiffs sought judicial review under § 1395oo(f)(1), *see Select Specialty*, 391 F. Supp. 3d at 57 n.1, and they now qualify as prevailing parties because they "received the relief they sought" and "their suit . . . served as a 'catalyst'" for that relief, *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 982–83 (D.C. Cir. 1991) (applying this "two-part test" to determine a prevailing party under § 1395oo(f)(2)). That is, the plaintiffs' complaints primarily requested that the Administrator's final decisions be set aside, *see* S1-Compl. ¶ 128; S2-Compl. ¶ 147–48;

---

[9] The provision also provides a formula for calculating the interest. *See* 42 U.S.C. § 1395oo(f)(2) ("[T]he amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180-day period as determined pursuant to subsection (a)(3) and equal to the rate of interest on obligations issued for purchase by the Federal Hospital Insurance Trust Fund for the month in which the civil action authorized under paragraph (1) is commenced.").

[10] Supreme Court and D.C. Circuit case law make clear that Rule 59(e), and not Rule 60, is the proper avenue for a postjudgment motion for prejudgment interest, even where "prejudgment interest is available as a matter of right." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 n.3 (1989); *see also Winslow v. FERC*, 587 F.3d 1133, 1136 (D.C. Cir. 2009) (collecting other circuit cases); *S.C. Mgmt., Inc. v. Leavitt*, No. 1:05CV12 CDP, 2005 WL 3263279, at *1 (E.D. Mo. Dec. 1, 2005) (granting providers' Rule 59(e) motion to amend judgment to award interest under 42 U.S.C. § 1395oo(f)(2)).

H-Compl. ¶ 68, and that was the relief ordered in entering final judgment in this suit, *see* Order (Aug. 22, 2019), ECF No. 74.  Where these requirements are met, prejudgment interest "shall . . . be awarded by the reviewing court."  42 U.S.C. § 1395oo(f)(2); *Tucson Med. Ctr.*, 947 F.2d at 981 ("Section 13[9]5oo(f)(2) is expressly directed to the judiciary.").

Defendant opposes plaintiffs' motion on the ground that "[t]his matter is not yet final because the Secretary has moved for reconsideration of the Court's Order and that motion remains pending," Def.'s Opp.'n to Pls.' Application to Tax Costs & Mot. for Prej. Interest ("Def.'s Opp'n") at 2, ECF No. 81, but defendant makes no argument that plaintiffs will not be entitled to prejudgment interest once the motion for reconsideration is denied with plaintiffs' status as a prevailing party intact.

While the Secretary must still determine on remand the amounts to which plaintiffs are entitled, plaintiffs are entitled to prejudgment interest on those amounts as a matter of right, so their motion is granted.

## IV. CONCLUSION

For the reasons stated, defendant's motion is denied and plaintiff's motion is granted.  An order will be entered contemporaneously with this Memorandum Opinion.

Date: November 4, 2019

_____
BERYL A. HOWELL
Chief Judge